COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.
2-07-369-CR

 

 

MICHAEL ANTHONY DELLATORE                                          APPELLANT

 

                                                      V.

 

THE STATE OF TEXAS                                                                 STATE

 

                                                  ------------

 

             FROM
THE 213TH DISTRICT COURT OF TARRANT COUNTY

 

                                                  ------------

 

                                  MEMORANDUM
OPINION[1]

 

                                                  ------------

 

I.  Introduction








Appellant Michael Anthony
Dellatore appeals his conviction for possession with intent to deliver a
controlled substance of four grams or more, but less than 200 grams of
methamphetamine.  In two points,
Dellatore challenges the legal and factual sufficiency of the evidence to
support his conviction.  We will affirm.

II.  Factual Background

Officer Bret Morgan with the
Euless Police Department testified that he first encountered Dellatore in 2003
when Dellatore was a passenger in a truck that was leaving a residence at 1003
Collin Drive, where Officer Morgan was investigating complaints that drugs were
being dealt.  Officer Morgan investigated
the residence again in 2004 when another drug complaint was made and then met
with the occupants of the residenceCMarie Burris[2]
and DellatoreCin March
2006, when they made a harassment report and verified their address as 1003
Collin Drive. 













As part of his ongoing
investigation, Officer Morgan conducted a trash investigation[3]
of the trash from 1003 Collin Drive on December 1, 2006.  Within the trash, Officer Morgan found
multiple Adeal bags@ with a powdery residue and a lot of small Aroaches@ or small,
smoked marijuana cigarettes.  He also
found mail addressed to Marie Burris and Michael Dellatore.[4]  Based on the items found in the trash and
Officer Morgan=s ongoing
investigation of 1003 Collin Drive, he prepared and submitted a search warrant
affidavit.[5]  Officer Morgan testified at trial that he did
not have personal knowledge that Dellatore was living at 1003 Collin
Drive.  However, he connected the dotsCDellatore had said he was living there in March when he filed the
harassment report, and then the mail from the trash run on December 1, 2006,
indicated that Dellatore was still living there.  Based on the search warrant affidavit, a
judge issued a search warrant for 1003 Collin Drive.  Officer Morgan thereafter contacted Detective
Murphree with the narcotics task force. 

Officer Todd Murphree, who
was assigned to the narcotics task force of the Euless Police Department
testified that on December 1, 2006, he executed the search warrant at 1003
Collin Drive and that six to eight officers accompanied him.  As they approached the house, Burris came out
of the house.  Officer Murphree entered
the house and made sure that there were no others in the house before bringing
Burris back in and detaining her in the front living area. 








Office Murphree searched the
bathroom and a bedroom that had been turned into an office.  In the room that functioned as an office,
Officer Murphree found a digital scale sitting on top of the desk, along with a
small notebook with a rose on the front that contained names written in it with
numerical values beside them.  Inside the
left-hand drawer of the desk, he located one baggie, containing a white crystal
substance that he recognized to be methamphetamine.  In that same drawer, he found a larger
Zip-lock baggie that had hundreds of empty baggies in it.  Office Murphree also found a traffic citation
dated October 9 issued to Dellatore and bearing the address of 1003 Collin
Drive.  Officers also located documents
with Burris=s name on
them in the office. The documents found closest to the drugs belonged to
Burris.  On a wall shelving unit, he
found other baggies, containing what appeared to be methamphetamine.  He also found a black wallet, in which there
were three more baggies that contained methamphetamine. 

Officer Murphree did not
recall seeing any items in the bathroom that obviously belonged to a man, but
he said he was not searching for such items. 
A picture of the bathroom was admitted into evidence showing that the
toilet seat was in the upright position; no explanation was provided for the
seat=s position, i.e., use, cleaning, or otherwise.

In the other bedroom, where
more methamphetamine was located, officers noticed a pair of men=s boots and a baseball cap.  One
of the photographs that was admitted into evidence depicted a tray located
inside one of the bedrooms.  The tray
contained some marijuana residue and a digital scale, which Officer Murphree
testified is used to weigh narcotics. 
During the search, officers found $394 in the black wallet in the
office, $220 in the desk drawer in the office, and $642 in Burris=s purse. 








While officers were searching
the residence, Dellatore arrived, and the officers detained him.  Dellatore told Officer Murphree that
Dellatore had some framed football jerseys on the wall in the house that
belonged to him and that he and Burris had slept in one of the bedrooms the
previous night.  Officer Murphree also
recalled that Burris had said that she and Dellatore were common-law husband
and wife. 

Officer Murphree testified
that Auser amount@ is an
amount, usually a gram, that someone would ingest for his personal use, whereas
Adealer amount@ refers to Aintent for redistribution or sale, something more than just for
personal use.@  He further testified that based on his
experience and training, the quarter ounce of methamphetamine found in this
case, along with the presence of hundreds of baggies, digital scales, and the
ledger notebook, indicate a dealer quantity rather than a personal use
quantity.  Pursuant to office policy,
Officer Murphree did not take any fingerprints on any of the evidence. 

Sharon Patton, a drug chemist
with the Fort Worth Police Department Crime Lab, testified that she tested
three baggies containing a powdery substance. 
The baggie labeled J-1 measured 0.12 grams, the baggie labeled J-2
measured 1.3 grams, and the baggie labeled J-3 measured 0.01 grams; each of
these baggies contained methamphetamine. 
Additionally, State=s Exhibit 6, Item E measured 5.58 grams containing methamphetamine. 








After hearing the evidence,
the jury found Dellatore guilty of the offense of possession of a controlled
substance, namely methamphetamine, of four grams or more but less than 200
grams with intent to deliver as charged in the indictment.  After hearing evidence during the punishment
phase, the trial court sentenced Dellatore to thirty years= confinement.  This appeal
followed.

III.  Sufficiency Standards of Review

A.  Legal Sufficiency

In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the prosecution in order to determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).








This standard gives full play
to the responsibility of the trier of fact to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State,
34 S.W.3d 912, 919 (Tex. Crim. App. 2000). 
Thus, when performing a legal sufficiency review, we may not re-evaluate
the weight and credibility of the evidence and substitute our judgment for that
of the fact-finder.  Dewberry v. State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131
(2000).  Instead, we Adetermine whether the necessary inferences are reasonable based upon
the combined and cumulative force of all the evidence when viewed in the light
most favorable to the verdict.@  Hooper v. State, 214
S.W.3d 9, 16B17 (Tex.
Crim. App. 2007).  We must presume that
the fact-finder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.  The standard of review is the same for direct
and circumstantial evidence cases.  Clayton,
235 S.W.3d at 778; Hooper, 214 S.W.3d at 13.

B.  Factual Sufficiency








When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.  Watson,
204 S.W.3d at 414B15, 417; Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.








In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to overturn [the]
conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s resolution of a conflict in the evidence.  Id. 
We may not simply substitute our judgment for the fact-finder=s.  Johnson, 23 S.W.3d at
12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at
8.  Thus, we must give due deference to
the fact-finder=s
determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint
on appeal.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

 

IV. 
Sufficiency of Evidence to Support Conviction For 

Possession of Controlled Substance

 

In his two points, Dellatore
argues that the evidence is legally and factually insufficient to support the
jury=s finding that he possessed the methamphetamine at issue.[6]  Specifically, Dellatore argues that the
evidence proves that Burris was the only person present when the police arrived
and that the links present do not show a knowing possession by
Dellatore. 








The State=s indictment charged that Dellatore Adid then and there intentionally or knowingly possess a controlled
substance, namely: methamphetamine, of four grams or more, but less than two
hundred grams, including any adulterants or dilutants, with intent to deliver
said controlled substance.@[7]  See Tex. Health & Safety
Code Ann. ' 481.112(a).  To prove
possession of a controlled substance, the State had to prove that Dellatore (1)
exercised actual care, custody, control, or management over the contraband and
(2) that he knew the matter possessed was contraband.  See id. '' 481.002(38), 481.115(a) (Vernon 2003); Deshong v. State, 625
S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.] 1981); Taylor v. State, 106
S.W.3d 827, 830 (Tex. App.CDallas 2003, no pet.).








The State does not have to
prove that the accused had exclusive possession of the contraband; joint
possession is sufficient to sustain a conviction.  See Cude v. State, 716 S.W.2d 46, 47
(Tex. Crim. App. 1986).  When there is no
evidence that the appellant was in exclusive control of the place where the
contraband was found, however, the State must offer additional, independent facts
and circumstances that Alink@ the accused to the contraband. 
See Poindexter v. State, 153 S.W.3d 402, 406 (Tex. Crim. App.
2005); Deshong, 625 S.W.2d at 329; see also Evans v. State, 202
S.W.3d 158, 161 n.9 (Tex. Crim. App. 2006) (stating that A[w]e have used that term >affirmative links,= but we recognize that >affirmative= adds
nothing to the plain meaning of >link.=  Henceforth, we will use only >link= so that it
is clear that evidence of drug possession is judged by the same standard as all
other evidence@).  The links between Dellatore and the
contraband must be established by either direct or circumstantial
evidence.  See Poindexter, 153
S.W.3d at 406.

No formula of facts exists to
dictate a finding of links sufficient to support an inference of knowing possession.  See Taylor, 106 S.W.3d at 830.  It is the logical force of the evidence, and
not the number of links, that supports a fact-finder=s verdict.  See Evans,
202 S.W.3d at 166.  Possible links
include but are not limited to the following: 
(1) whether the defendant was present when the drugs were found; (2)
whether the drugs were in plain view; (3) the defendant=s proximity to and the accessibility of the drugs; (4) whether the
defendant was under the influence of drugs when arrested; (5) whether the
defendant possessed other contraband or drugs when arrested; (6) whether the
defendant made any incriminating statements when arrested; (7) whether the
defendant attempted to flee; (8) whether the defendant made furtive gestures;
(9) whether there was an odor of drugs; (10) whether other contraband or other
drug paraphernalia was present; (11) whether the defendant owned or had the
right to possess the place where the drugs were found; (12) whether the place
the drugs were found was enclosed; (13) whether the defendant was found with a
large amount of cash; and (14) whether the conduct of the defendant indicated a
consciousness of guilt.  Id. at
162 n.12.








In this case, the baggies of
methamphetamine that Officer Murphree located were found after Officer Morgan
had performed a trash investigation at 1003 Collin Drive that confirmed that
drugs were being dealt from that location. 
Although the testimony at trial showed that Burris was the only person
present when officers arrived to conduct the search, the evidence established
that Dellatore arrived during the search. 
Officers confiscated over $1,200 in cash in addition to the baggies
containing methamphetamine powder, deal baggies, ledger notebook, and a digital
scale, which the officers found scattered throughout the office that Dellatore
would have had access to by virtue of his living in the house.  Dellatore pointed out to officers the bedroom
where he had slept the previous night and admitted that the framed football
jerseys that hung on the wall in the house belonged to him.  As further evidence that Dellatore lived at
1003 Collin Drive, officers located mail and a traffic citation that reflected
Dellatore=s name and
the Collin Drive address.

Officer Murphree testified,
however, that he did not take any fingerprints from the baggies or scales and
that he did not attempt to match the men=s boots that were found to Dellatore=s shoe size. 













Although this evidence
satisfies less than the full series of indicia listed above, viewing the
evidence in a favorable or neutral light, the foregoing evidence is sufficient
to enable a rational fact-finder to link Dellatore to the methamphetamine found
at 1003 Collin Drive.  See Washington
v. State, 902 S.W.2d 649, 653 (Tex. App.CHouston [14th Dist.] 1995, pet. ref=d) (holding that the evidence presented, which showed that appellant
owned the restaurant at which cocaine was found in his office and that other
employees had a key to the office, provided links from which the jury could
rationally find that appellant controlled the cocaine and knew the cocaine was
contraband).  We hold that the evidence
is legally and factually sufficient to link Dellatore to the methamphetamine.  See Poindexter, 153 S.W.3d at 405,
412; Ramos v. State, Nos. 02-07-00118-CR, 02-07-00119-CR, 2008 WL
623777, at *5 (Tex. App.CFort Worth
Mar. 6, 2008, pet. ref=d) (mem.
op., not designated for publication) (holding that evidence was legally and
factually sufficient to link appellant to cocaine residue found in water heater
closet in the tattoo parlor that appellant operated in the garage connected to
his home); Berrum v. State, No. 11-01-00011-CR, 2002 WL 32341848,
at *2B3 (Tex. App.CEastland
Jan. 10, 2002, no pet.) (not designated for publication) (holding that evidence
was legally and factually sufficient to link appellant to cocaine that was
found in a closet underneath the stairs, which was conveniently accessible to
appellant);  Thompson v. State,
No. 07-99-00403-CR, 2000 WL 987303, at *1B2 (Tex. App.CAmarillo
July 18, 2000, no pet.) (not designated for publication) (holding that,
although evidence satisfied less than the full series of indicia, evidence was
legally sufficient to link appellant to cocaine found in a space heater in hall
closet); Matthews v. State, No. 01-97-01348-CR, 1999 WL 233510, at *4B5 (Tex. App.CHouston [1st
Dist.] Apr. 22, 1999, pet. ref=d) (not designated for publication) (holding that evidence was legally
and factually sufficient to support jury=s finding that appellant was guilty of possession of cocaine that was
found in bedroom closet that appellant shared with his wife).  Cf. Pierce v. State, No.
03-06-00492-CR, 2007 WL 4269796, at *15B16 (Tex. App.CAustin Dec.
5, 2007, no pet.) (mem. op., not designated for publication) (holding that
evidence was legally insufficient to connect appellant to methamphetamine lab
at house because evidence revealed that appellant had moved and was no longer
living at residence where lab was found). 
We overrule Dellatore=s two points. 

V.  Conclusion

Having overruled both of
Dellatore=s points, we
affirm the trial court=s judgment.

 

SUE WALKER

JUSTICE

 

PANEL:
HOLMAN, GARDNER, and WALKER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  October 9, 2008











[1]See Tex.
R. App. P. 47.4.





[2]The
reporter=s
record uses the spelling ABurrus@;
however, we use the spelling ABurris@
because it appears on the documents in the clerk=s
record.





[3]Officer
Morgan testified that a trash investigation consists of the police going to a
location suspected of narcotics activity on the day that the trash is scheduled
for pick up and taking the trash from that location back to the police
department to sift through it for evidence of narcotics activity. 





[4]The
mail that was addressed to Dellatore consisted of solicitation-type mail or
junk mail; an AT&T bill was addressed to Burris. 





[5]In
addition to describing the items found in the trash, Officer Morgan included
the following facts in his search warrant affidavit:

 

(1) On September 17, 2003, he
followed up on a complaint that Burris was dealing narcotics from 1003 Collin
Drive and stopped a green pick-up truck as it left the residence.  As a result of the stop, he arrested Burris
for possession of a prohibited weapon and possession of methamphetamine.  He noted that Dellatore was a passenger in
the truck during this stop.  

 

(2) On June 26, 2004, Officer
Morgan was contacted by a confidential informant who stated that Burris was in
possession of a large amount of methamphetamine.  Officer Morgan observed two people enter a
vehicle parked in the driveway of 1003 Collin Drive.  Another officer stopped that vehicle, which
was driven by Scott Braden.  Braden and
Burris, who was the passenger, were arrested for possession of methamphetamine.


 

(3)
On March 23, 2006, Burris and Dellatore contacted Officer Morgan to make a
harassment report and verified that they lived at 1003 Collin Drive in Euless. 





[6]Because
Dellatore challenges solely on the possession element of the offense and does
not challenge the Aintent
to deliver@
element, we need not address the sufficiency of that aspect of his conviction.





[7]Possession
with intent to deliver methamphetamine is a felony of the first degree if the
amount of the controlled substance to which the offense applies is, by
aggregate weight, including adulterants or dilutants, four grams or more but
less than 200 grams.  Tex. Health &
Safety Code Ann. '
481.112(d) (Vernon 2003).