NO









NO. 12-08-00460-CR

 

                         IN
THE COURT OF APPEALS

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER, TEXAS

 

 

LUIS ALBERT VILLALOBOS,                       '     APPEAL
FROM THE 241ST

APPELLANT

 

V.                                                                         '     JUDICIAL
DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE                                                        '     SMITH COUNTY , TEXAS

 





                                                      MEMORANDUM
OPINION

Appellant
Luis Villalobos appeals his conviction for possession of marihuana in the
amount of 2,000 pounds or less but more than 50 pounds.  In two issues,
Appellant contends that the evidence is insufficient to support the jury’s
verdict and that the State made an impermissible jury argument.  We affirm.

 

Background

In
April 2008, Texas Department of Public Safety (DPS) officers in McAllen, Texas,
were contacted by a confidential informant regarding what he believed to be a
shipment of drugs the informant had been retained to drive from McAllen, Texas,
to Tyler, Texas.  The informant was a truck driver for a legitimate third party
trucking and shipping company.  He reported the shipment because he thought it
suspicious that he was to be paid half his fee upon pickup, and the other half
upon delivery.  In McAllen, DPS officers x-rayed the truck, opened one of the
boxes on the truck, and found a water cooler designed to dispense bottled
water.  

The
cooler had been disassembled and its internal components removed. Packaged
marihuana was placed inside, and the cooler was then reassembled.  The
reassembled cooler was put in a shipping box, which was placed onto a pallet
with other similar boxes.  Finally, each pallet was tightly wrapped with
cellophane shrink wrap, and the pallets were loaded onto the informant’s truck.

            The
officers decided to allow delivery of the marihuana through a “sting” operation
in Tyler, which they believed would result in the apprehension of the members
of the drug distribution ring.  The officers outfitted the confidential
informant with video and sound and he left with the load.  When he arrived in Tyler, the informant met his contact, an individual other than Appellant, who then
directed the informant to a third location, which was the place of delivery. 

The
location was a former truck yard and place to unload shipments, but had not
been used or equipped for unloading shipments for over two years.  At the time
in question, the property was used sporadically as a repair shop for vehicles,
machinery, and equipment. 

Appellant
paid the utility bills and performed mechanic services at the property as a
second job in exchange for the right to live on  the property.  The exact
percentage of time that Appellant stayed overnight at the property is disputed.
 It is undisputed, however, that Appellant lived on the property at least
sporadically and that Johnny Riley also lived there.  Riley is the owner’s
uncle.  He lived on the property to watch over it while his nephew, the owner,
was incarcerated. 

            When
the informant arrived at the property, he noticed nine persons, including
Appellant, at the property.  Because there was no loading dock, one of these
persons had rented a large forklift and transported it to the property as the truck
arrived.  The pallets were unloaded directly onto the wet, muddy ground. Other
individuals began removing the boxes from the pallets and loading them into
different passenger trucks and personal automobiles.  Appellant assisted in the
unloading process.  The officers, who had the property under surveillance,
entered the property while Appellant and the other individuals unloaded the
truck. 

Appellant
fled the scene and hid with two other suspects.  Only these three of the nine
individuals were apprehended.  In all, over 200 boxes with coolers inside were
unloaded.  Some of the coolers contained marihuana, and others did not.  All of
the boxes remained sealed during the unloading process, but only boxes
containing marihuana were loaded into the personal automobiles after being
unloaded from the truck.  In all, approximately 1,200 pounds of marihuana was
seized.

            At
trial, the jury convicted Appellant of possession of marihuana in the amount of
2,000 pounds or less but more than 50 pounds, and assessed his punishment at
fifteen years of imprisonment.

 

Legal and Factual Sufficiency of the Evidence

            In
his first issue, Appellant challenges the legal and factual sufficiency of the
evidence to support the verdict.  Specifically, he argues that the evidence is
insufficient to show that he had knowledge of the contraband concealed inside
the water coolers. 

Standard
of Review

In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all of the evidence in the light most favorable to the prosecution in
order to determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560
(1979); LaCour v. State, 8 S.W.3d 670, 671 (Tex. Crim. App.
2000).  The jury is the sole judge of the credibility of witnesses and of the
weight to be given their testimony.  Barnes v. State, 876 S.W.2d
316, 321 (Tex. Crim. App. 1994). Any reconciliation of conflicts and
contradictions in the evidence is entirely within the jury's domain.  Losada
v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986).  Likewise, it is
the responsibility of the jury to weigh the evidence and draw reasonable
inferences from basic facts to ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at 2789.

In
conducting a factual sufficiency review, we look at the evidence in a neutral
light.  Lancon v. State, 253 S.W.3d 699, 705 (Tex. Crim. App.
2008).  A verdict will be set aside if the evidence supporting the conviction,
although legally sufficient, is so weak that the jury's determination is
clearly wrong and manifestly unjust, or when there is some objective basis in
the record that shows the great weight and preponderance of the evidence
contradicts the jury's verdict.  Berry v. State,
233 S.W.3d 847, 854 (Tex. Crim. App. 2007); Watson v. State, 204
S.W.3d 404, 414-15, 417 (Tex. Crim. App. 2006).  A clearly wrong and unjust
verdict occurs where the jury's finding is manifestly unjust, shocks the
conscience, or clearly demonstrates bias.  Berry, 233 S.W.3d at
854.

Although
we are authorized to disagree with the jury's determination, even if probative
evidence exists that supports the verdict, our evaluation should not
substantially intrude upon the jury's role as the sole judge of the weight and
credibility of witness testimony.  Santellan v. State, 939 S.W.2d
155, 164 (Tex. Crim. App. 1997).  Unless we conclude that it is necessary to
correct manifest injustice, we must give due deference to the jury's
determinations.  Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000).  It is not enough that we might harbor a subjective level of
reasonable doubt to overturn a conviction that is founded on legally sufficient
evidence.  See Watson, 204 S.W.3d at 417. 

Applicable
Law

A
person commits a second degree felony if he knowingly or intentionally
possesses marihuana in the amount of 2,000 pounds or less but more than 50
pounds.  Tex. Health & Safety Code
Ann. § 481.121(a), (b)(4) (Vernon 2003 & Supp. 2009). “Possession” is
defined as having “actual care, custody, control, or management” of the
controlled substance.  Tex. Penal Code
Ann. § 1.07(39) (Vernon Supp. 2008).

To
support a conviction for possession of a controlled substance, the state must
also prove that “(1) the accused exercised control, management, or care over
the substance; and (2) the accused knew the matter possessed was contraband.”  Evans
v. State, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); Poindexter
v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005).  If the contraband
is not in the exclusive possession of the accused, the state must show
additional independent facts and circumstances that affirmatively link the
accused and the contraband.  Brown v. State, 911 S.W.2d 744, 748
(Tex. Crim. App. 1995); Deshong v. State, 625 S.W.2d 327, 329
(Tex. Crim. App. 1981). Mere presence where the drugs are found is insufficient
alone, but when combined with other evidence, either direct or circumstantial
(“links”), may well be sufficient to establish knowing possession, control,
management, or care of the contraband beyond a reasonable doubt.  Evans,
202 S.W.3d at 162.

The
following is a nonexclusive list of possible links that have been recognized as
sufficient, either singly or in combination, to establish a person's knowing
possession of the contraband:

 

(1) the defendant's presence when a search is
conducted; (2) whether the contraband was in plain view; (3) the defendant's
proximity to and the accessibility of the narcotic; (4) whether the defendant
was under the influence of narcotics when arrested; (5) whether the defendant
possessed other contraband or narcotics when arrested; (6) whether the
defendant made incriminating statements when arrested; (7) whether the
defendant attempted to flee; (8) whether the defendant made furtive gestures;
(9) whether there was an odor of contraband; (10) whether other contraband or
drug paraphernalia were present; (11) whether the defendant owned or had the
right to possess the place where the drugs were found; (12) whether the place
where the drugs were found was enclosed; (13) whether the defendant was found
with a large amount of cash; and (14) whether the conduct of the defendant
indicated a consciousness of guilt.

                                    

Evans,
202 S.W.3d at 163 n.12. 

Legal
Sufficiency

Viewing
the evidence in the light most favorable to the verdict, we first note that
Appellant was present at the scene when DPS officers entered the property to
arrest the suspects.  Additionally, he was in close proximity to the contraband
and actively assisted in the unloading process. 

Appellant
had the right to possess the property where the marihuana was delivered.  On
the surveillance video, he told the informant that he owned the property.  The evidence
at trial, however, showed that he did not own the property, but that he resided
there sporadically.  Johnny Riley, the other resident, also had the right to
possess the property.  However, Riley was sent out for a “beer run” while the
truck was unloaded.  Thus, Appellant controlled the property when the delivery
took place and allowed the other suspects access so that the contraband could
be unloaded. 

Simultaneously
with Riley’s departure, the truck containing the marihuana and the rented
forklift used to unload the marihuana arrived at the property.  The nine
individuals who remained at the property, including Appellant, unloaded the
truck in Riley’s absence.  Riley was gone for over an hour.  He returned before
the truck was completely unloaded, but the DPS officers did not arrest him
because there was no evidence linking him to the shipment. 

Appellant
and Riley testified that trucks had not been unloaded on the property for over
two years.  Furthermore, the property was no longer suitable for unloading
trucks.  As a result, the pallets were strewn across muddy, wet ground.  DPS
officers testified that this indicated the load was not objectively legitimate
because a legitimate shipping operation would not allow boxed merchandise to be
lying on a wet, muddy surface.  Officers also testified that the load here was
not likely a legitimate shipment of goods because the boxes were reloaded into
personal passenger vehicles at the initial point of delivery.

Appellant
fled when the police entered the premises to arrest the suspects. Appellant
also provided two false names to the police upon his apprehension.  This
conduct indicates a consciousness of guilt. 

The
amount of contraband, over 1,200 pounds, is significant.  The DPS officers all
testified that this was the largest marihuana seizure they could recall in Tyler.  Those officers also testified that it is uncommon to entrust that amount of
marihuana, which had a wholesale value of over $500,000.00, to individuals not
associated with the drug distribution network. 

Viewing
the evidence in the light most favorable to the verdict, we hold that a
rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt, including that Appellant had knowledge that the
boxes contained marihuana.  Therefore, the evidence is legally sufficient to
support the verdict. 

Factual
Sufficiency

Appellant
argues that the packaging of the marihuana rendered it impossible to show that
Appellant had knowledge of the contents.  Specifically, he claims that evidence
showing the marihuana was secreted in coolers, which were further concealed in
boxes, does not demonstrate that he knew the boxes contained marihuana.  Moreover,
none of the officers could recall whether the packages emitted an odor.  Appellant
also argues that since the drug distribution ring hired a legitimate truck
driver, it is plausible that they found a legitimate place of business at which
to unload their shipment—i.e., the property controlled by Appellant. 

However,
it is not the number of links that is dispositive, but rather the logical force
of all the evidence, both direct and circumstantial.  See Evans,
202 S.W.3d at 162. Furthermore, where there is conflicting evidence, the jury’s
resolution of the conflicts is generally regarded as conclusive.  Van
Zandt v. State, 932 S.W.2d 88, 96 (Tex. App.-El Paso 1996, writ
ref’d).  Having reviewed the record in its entirety, with consideration given
to all the evidence, both for and against the trial court’s finding, we cannot
say that the proof of guilt is so obviously weak or otherwise so greatly
outweighed by contrary proof as to render Appellant’s conviction clearly wrong
or manifestly unjust.  Therefore, we hold that the evidence is factually
sufficient to support the trial court’s judgment. 

Appellant’s
first issue is overruled. 

 

Jury Argument

            In
his second issue, Appellant asserts that the State made an impermissible
argument during its rebuttal to defense counsel’s jury argument.

Jury
argument is permissible if it constitutes a summation of the evidence, a
reasonable deduction from the evidence, an answer to argument of opposing
counsel, or a plea for law enforcement.  Felder v. State, 848
S.W.2d 85, 94-95 (Tex. Crim. App.1992). An argument that exceeds these bounds
is error, but not necessarily reversible error.  Id. 

Appellant’s
counsel stated the following during his jury argument:

 

Let me tell you what a verdict of not guilty says.  What
a verdict of not guilty says is this: “Buddy, we’re coming after you, and we’re
not going to let you use people like [Appellant] to fulfill your purposes when
you direct that truck where to go, when you make friends with people who are
not a part or participating in your operation.

 

Appellant complains here of the
following portion of the State’s rebuttal:

 

And if you really think that finding him not guilty
meant that “[co-defendant], boy we’re going after you now, I’ll tell you that
right now” – if you find him not guilty meant nobody knew anything, because
when [his co-defendant’s] trial gets here, they’re going to say the same thing.
 It wasn’t even his land.

 

. . . .  

 

Everything in totality of it, everybody working
together to achieve a common goal, they’re all guilty or none of them are
guilty.

 

Appellant
argues that the State’s rebuttal argument is a misstatement of the law.
Consequently, he contends, the State’s rebuttal allowed the jury to convict
Appellant based solely on his presence at the scene where the marihuana was
unloaded.  He further asserts that since there is a lack of evidence connecting
Appellant with the marihuana, the harm from the State’s rebuttal is especially
apparent. 

Appellant
argued that a not guilty verdict would send a message to drug dealers that
their efforts to distance themselves from their misdeeds will be ineffectual,
that they alone will be convicted for the offense, and innocent third parties
who unknowingly participated in drug trafficking will not be convicted.  In his
closing argument, Appellant’s counsel maintained that Appellant was an
unwitting participant in the operation. 

The
State, in its rebuttal, urged that, under the facts of this case, all of
Appellant’s codefendants had knowledge of the marihuana’s existence.  The State
pointed out that in their subsequent trials, Appellant’s codefendants will all
attempt to distance themselves from the transaction.  If Appellant were found
not guilty, the State warned, the others would not be convicted either because
each could argue that “[i]t wasn’t even his land.” 

We
conclude that the State’s rebuttal was an answer to the argument of Appellant’s
counsel and falls within the bounds of permissible jury argument.  Appellant’s
second issue is overruled.

 

Disposition

 

            We affirm the
judgment of the trial court. 

 

                                                                                                    
BRIAN HOYLE    

                                                                                                              
Justice

 

 

Opinion delivered November 12, 2009.

Panel consisted of
Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)